# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

WILFREDO SANCHEZ,                          )
                                                    )
                 Petitioner,                     )
                                                    )
               v.                              )          No. 11-CV-3953
                                                    )
MARCUS HARDY, Warden, superintendent,
or authorized person having custody of petitioner,  )
                                                    )
               Respondent.                     )

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

Petitioner Wilfredo Sanchez, a prisoner at Stateville Correctional Center, where Respondent Marcus Hardy is Warden, now petitions for writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons set forth below, we deny the petition.

### FACTUAL AND PROCEDURAL BACKGROUND

**I.     Summary**

In January of 2004, Wilfredo Sanchez and codefendant, Jesus Parra, were charged in the Circuit Court of Cook County with one count of first-degree murder for the shooting death of Christian Simpson and two counts of aggravated battery with a firearm for the shootings of Ricky Simpson and Marques Chaplin. (Resp. Ex. A, Rule 23 Order, *People v. Sanchez*, No. 1-05-2306 at 1 (Ill. App. 1st Dist. 2007).) Sanchez was tried simultaneously with Parra but with separate juries. (*Id.* at 2.) After an April 2005 trial, the jury found Sanchez guilty on all counts.

(*Id.*)  The state trial court sentenced him to thirty-five years for first-degree murder, ten years consecutive for one count of aggravated battery, and six years consecutive for the second count of aggravated battery.  (*Id.* at 1, 9.)  The facts underlying Sanchez's conviction are as follows.[1]

## II.    Sanchez's Conviction

On the night of September 27, 2003, Ricky Simpson, Christian Simpson, and Marques Chaplin were driving to a party in a white Dodge Neon.  (*Id.* at 2.)  They got lost and stopped at the intersection of Kensington and Michigan to determine where to go.  (*Id.*)  As they were stopped, a white four-door car pulled up on the left side of Chaplin's vehicle.  (*Id.* at 2–3.)  From that car, a shooter fired at Chaplin's face.  Chaplin slumped down, but both he and Ricky heard five additional shots fired into the car.  (*Id.* at 3.)  Chaplin was able to drive to Roseland Hospital where he was treated for a shot to the face and hands, Ricky Simpson was treated with twenty-five stitches for a shot to the leg, and Christian Simpson died from his wounds.  (*Id.*)  In a subsequent lineup, Chaplin identified Parra as the shooter, but neither Chaplin nor Ricky identified Sanchez.  (*Id.*)

### a.    *Statement and Grand Jury Testimony of Daisy Lopez*

Detective Richard Peck was assigned to investigate the homicide of Christian Simpson. He spoke with Daisy Lopez, the girlfriend of Parra, but did not receive any concrete leads.  (*Id.* at 4.)  He then spoke with Dwayne Anderson, a member of the Latin Kings gang.  (*Id.* at 4, 14.)  As a result of that conversation, he went to speak with Lopez again.  (*Id.* at 4.)  Although initially reluctant to change her story, Lopez stated that on the night of the shooting, Parra and

---

[1] The state court's account of the facts is presumed correct because it has not been rebutted by clear and convincing evidence.  *See* 28 U.S.C. § 2254(e)(1); *see also Sumner v. Mata*, 449 U.S. 539, 547, 101 S. Ct. 764, 769–70 (1981).

Sanchez came into the house, grabbed a shotgun, and went outside. (*Id.* at 5, 7.) Shortly after they left, Lopez heard several gunshots near her apartment. (*Id.* at 5, 7.)

Detective Peck then called the felony review unit of the State's Attorney's office. (*Id.* at 5.) Assistant State's Attorney Andreana Turano-Michiels arrived and spoke with Lopez individually. (*Id.*) According to ASA Turano-Michiels, Lopez spoke with her willingly and did not suggest that the police threatened or mistreated her during their questioning. (*Id.* at 6.) After this one-on-one conversation, Lopez agreed to give a written statement prepared by ASA Turano-Michiels. (*Id.* at 6.) With Detective Peck present, ASA Turano-Michiels took Lopez's statement, and Lopez read and signed each page. (*Id.* at 5, 7.) At the end of the statement, Lopez agreed that she gave the statement freely and was not under the influence of drugs or alcohol. (*Id.* at 8.) Detective Peck and Detective Parks both testified that they did not threaten Lopez with potential prison time or losing custody of her children during this process. (*Id.* at 5–6.)

In the written statement, Lopez said that she saw Parra and Sanchez come into the house where Parra retrieved his shotgun. (*Id.* at 7.) Then, from her living room window, Lopez saw Sanchez get into the driver's seat of his white four-door car while Parra got into the passenger seat. (*Id.*) She watched the car drive on Kensington in the direction of Michigan, and less than five minutes later, she heard several gunshots near her apartment from that direction. (*Id.* at 5, 7.) A few minutes after the shots, Sanchez and Parra came back to the apartment. (*Id.*) Sanchez left in his car while Parra put away his shotgun and washed his hands with bleach. (*Id.* at 7–8.) Later that evening, Parra's mother came to the apartment and took the shotgun. (*Id.* at 8.) Finally, the statement recounted a conversation Lopez had with Parra in which he discussed

shooting at the Neon car.  (Resp. Ex. K, Rule 23 Order, *People v. Sanchez*, No. 1-08-3413 at 6 (Ill. App. 1st Dist. 2010).)

On December 22, 2003, Lopez testified in front of the grand jury to essentially the same facts in her statement.  (Resp. Ex. A, Rule 23 Order, *People v. Sanchez*, No. 1-05-2306 at 8 (Ill. App. 1st Dist. 2007).)  She added that while Parra was a member of the Latin Kings, Sanchez was a "neutron," a person not affiliated with any gang.  (*Id.*)  Lopez agreed that she gave the written statement, was not threatened by the police, and was not under the influence of drugs or alcohol at the time of her statement or testimony.  (*Id.* at 9.)

b.    *Trial Testimony of Daisy Lopez*

At the trial of Parra and Sanchez, Lopez testified that both Parra and Sanchez never left the apartment on the night of the shooting.  (*Id.* at 3.)  She said she did not see Sanchez drive his car that night and denied seeing Parra wash his hands with bleach.  (*Id.* at 4.)  In addition, she stated that she did not hear any shots fired that night nor did Parra's mother come to the apartment to retrieve the shotgun.  (*Id.*)  Finally, she denied knowing that Parra was a member of the Latin Kings but did agree that Sanchez was not a member of any gang.  (*Id.* at 3–4.)

When Lopez was impeached with her statement to ASA Turano-Michiels, she stated that the ASA asked questions, but she did not answer.  (*Id.* at 4.)  She admitted signing the statement but only because she was told to do so by the police and the ASA.  (*Id.*)  When Lopez was impeached with her grand jury testimony, she testified that she did not remember any of the testimony because she was high on marijuana when she testified.  (*Id.*)

After the state's direct examination of Lopez, Sanchez's jury was excused while Parra's attorney cross-examined Lopez regarding her testimony and previous statements.  (*Id.* at 11.)

During this cross-examination, Lopez testified that the police forced her to go to the station with them, Detectives Peck and Parks threatened to take away her children if she did not cooperate, and Detective Parks threatened her with thirty years in prison. (*Id.*) However, when Sanchez's jury returned and his attorney cross-examined Lopez, the attorney did not ask about any threats made by Detectives Peck and Parks. (*Id.*) He did ask Lopez about the night of the shooting, and she affirmed that she never saw Sanchez leave the apartment, wash his hands with bleach, or vomit in the bathroom. (*Id.*) Furthermore, she stated that she never saw Sanchez with a gun or ammunition and confirmed he was not in a gang. (*Id.*)

    c.    *Trial Testimony of Dwayne Anderson*

In front of Parra's jury only, Anderson testified that he knew Sanchez was not a gang member. (*Id.* at 14–15.) Afterward, Sanchez's attorney called Anderson to the stand for the purpose of eliciting testimony that Sanchez was not involved in a gang. (*Id.* at 15.) The State agreed to stipulate that Sanchez was not a member of a gang, but Sanchez's attorney did not offer the stipulation into evidence or call Anderson to testify. (*Id.*)

## III.    Direct Appeal

On direct appeal before the Illinois Appellate Court, Sanchez, with the assistance of counsel, argued that he was denied effective assistance of trial counsel because his attorney failed: (1) to cross-examine Lopez regarding the police coercion to which she testified in front of Parra's jury; (2) to offer evidence that Sanchez was not a gang member; and (3) to offer evidence that Sanchez was scared and vomiting after the shooting. (*Id.* at 9.) In addition, Sanchez argued that his credit for time served was calculated incorrectly. (*Id.* at 17.) The court rejected

Sanchez's claims of ineffective assistance of trial counsel and corrected his credit for time served. (*Id.*)

Sanchez petitioned the court for rehearing based on the following arguments: (1) he was prejudiced by "trial counsel's failure to impeach the only direct evidence against [him] with [the] readily available testimony" of Lopez; (2) trial counsel's failure to present evidence that Sanchez was not a gang member was ineffective assistance of counsel; and (3) Sanchez would not have violated his own confrontation rights by introducing Anderson's testimony that Sanchez was scared and throwing up. (Resp. Ex. E, Pet. for Rehearing, *People v. Sanchez*, No. 1-05-2306 at 1, 4, 6 (Ill. App. 1st Dist. 2007).) The Appellate Court denied his petition. (Resp. Ex. F, Order Denying Pet. for Rehearing, *People v. Sanchez*, No. 1-05-2306 (Ill. App. 1st Dist. 2007).)

In his Petition for Leave to Appeal (PLA) to the Illinois Supreme Court, Sanchez, with the assistance of counsel, argued that the trial counsel failed to attack the only "inculpatory evidence against Sanchez with testimony that is both impeaching and readily available." (Resp. Ex. G, Direct Appeal PLA, *People v. Sanchez*, No. 104831 at 11 (Ill. 2007).) Within this claim, Sanchez argued that trial counsel was ineffective for failing to introduce evidence that Lopez's statement was coerced and that Sanchez was not a gang member. (*Id.* at 11, 16–17.) However, his PLA did not include the claim that trial counsel was ineffective for failing to produce evidence that he was scared and throwing up after the shooting. The Illinois Supreme Court denied his petition. (Resp. Ex. H, Order Denying Direct Appeal PLA, *People v. Sanchez*, 225 Ill.2d 667, 875 N.E.2d 1121 (Table) (Ill. 2007).)

**IV.     Post-Conviction Proceedings**

Sanchez, pro se, sought post-conviction relief from his judgment pursuant to Section 2.1 of the Post-Conviction Hearing Act, 725 Ill. Comp. Stat. Ann. 5/122-2.1, bringing four overarching claims: (1) ineffective assistance of trial counsel; (2) prosecutorial misconduct; (3) abuse of discretion by the trial court; and (4) ineffective assistance of appellate counsel. (Resp. Ex. I, Post-Conviction Petition, *People v. Sanchez*, No. 04 CR 2166 at 2–6 (Cook Cty. Cir. Ct. 2008).)  Within his ineffective assistance of trial counsel claim, Sanchez argued that his trial attorney was ineffective for: (1) failing to object to out-of-court statements of Donna Parra, codefendant Parra's mother, brought in through Lopez; (2) failing to call Donna Parra to testify; (3) stipulating to evidence of phone calls being made the night of the shooting; (4) stipulating to the chain of custody of fired shotgun shells; (5) not cross-examining ASA Turano-Michiels regarding Lopez's written statement; (6) not making oral arguments in a motion for a new trial; (7) not filing a motion for severance; (8) stipulating to Dr. Arunkumar as an expert in the field of forensic pathology; (9) not cross-examining Dr. Arunkumar about the shotgun pellets, entrance and exit wounds, and shotgun waddings; and (10) failing to investigate the case and put certain witnesses on the stand.  (*Id.* at 2–4.)  Sanchez claimed that the prosecution engaged in misconduct for allowing Lopez to testify when they knew she was a hostile witness and for indicting him with a void indictment based on a statute that was not in effect and was also unconstitutional.  (*Id.* at 4–5.)  The abuse of discretion claim urged that the trial court erred in not asking potential jury members about bias against gang members.  (*Id.* at 5–6.)  Finally, Sanchez argued that his appellate counsel was ineffective for not raising any of the aforementioned issues on appeal.  (*Id.* at 6.)  The trial court denied Sanchez's petition.  (Resp.

Ex. J, Order Denying Post-Conviction Petition, *People v. Sanchez*, No. 04 CR 2166 (Cook Cty. Cir. Ct. 2008).)

On appeal, Sanchez claimed that both trial and appellate counsel were ineffective for failing to object to the admission of inculpatory statements made by Parra, which were included in Lopez's statement and read into evidence by ASA Turano-Michiels. (Resp. Ex. K, Rule 23 Order, *People v. Sanchez*, No. 1-08-3413 at 1, 6 (Ill. App. 1st Dist. 2010).) In this statement, Lopez stated that she had a conversation with Parra about his shooting at the Dodge Neon car. (*Id.* at 6.) The Appellate Court addressed the merits of Sanchez's claim but ultimately affirmed the judgment of the trial court because Parra's statements were found not to be inculpatory. (*Id.* at 6, 10.)

Sanchez petitioned the court for rehearing and argued that Parra's confession through Lopez's statement was inculpatory. (Resp. Ex. O, Pet. for Rehearing, *People v. Sanchez*, No. 1-08-3413 at 1 (Ill. App. 1st Dist. 2010).) His petition was denied. (Resp. Ex. P, Order Denying Pet. for Rehearing, *People v. Sanchez*, No. 1-08-3413 (Ill. App. 1st Dist. 2010).)

In his post-conviction PLA to the Illinois Supreme Court, Sanchez argued that his appellate counsel was ineffective for failing to object to the admission of Parra's inculpatory statements, thereby violating his confrontation rights. (Resp. Ex. Q, Post-Conviction PLA, *People v. Sanchez*, No. 111477 at 13 (Ill.).) The Illinois Supreme Court denied his petition. (Resp. Ex. R, Order Denying Post-Conviction PLA, *People v. Sanchez*, 239 Ill.2d 581, 943 N.E.2d 1107 (Table) (Ill. 2011).)

### V.    Federal Habeas Petition

After exhausting his state court remedies, Sanchez filed a pro se petition for writ of habeas corpus in this Court pursuant to 28 U.S.C. § 2254, asserting the following claims:[2]

(1) Ineffective assistance of trial counsel for failure to impeach Lopez with perjury after she admitted being under the influence of drugs at the police station and while testifying before the grand jury;

(2) Ineffective assistance of trial counsel for failure to call witnesses who could have caused a different result in the trial;

(3) Ineffective assistance of appellate counsel for failing to present the issue of Lopez's "knowing perjury," thereby denying Sanchez a fair trial; and

(4) Prosecutorial misconduct or violation of due process of law for the denial of a fair trial by the acts and non-acts of trial and direct appeal attorneys.  (Pet. at 5–6.)

## PROCEDURAL DEFAULT

### I.    Standard of Review

Before we may consider a petition for writ of habeas corpus on its merits, the petitioner must give the state courts one full opportunity to resolve any constitutional issues by proceeding through the state's established appellate review process.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S. Ct. 1728, 1732 (1999); *Malone v. Walls*, 538 F.3d 744, 753 (7th Cir. 2008).  To give the state courts one full opportunity and thereby avoid procedural default, the petitioner must: (1) exhaust all available state court remedies; and (2) fairly present any federal claims in state court.  28 USC § 2254(b)(1); *Picard v. Connor*, 404 U.S. 270, 275, 92 S. Ct. 509, 512 (1971).

_____

[2] In the substance of this opinion, we refer to claims by the numbers listed above.

A petitioner exhausts his remedies when no state remedies relating to his claims remain available.  28 U.S.C. § 2254©; *Boerckel*, 526 U.S. at 845, 119 S. Ct. at 1732; *Picard*, 404 U.S. at 275, 92 S. Ct. at 512.  Otherwise, the exhaustion doctrine precludes the federal court from hearing the petition.  *Perruquet v. Briley*, 390 F.3d 505, 513–14 (7th Cir. 2004).

A petitioner fairly presents his claim by asserting both the operative facts and the controlling legal principles through one full round of the state's established appellate process, either on direct appeal or in post-conviction proceedings.  *Boerckel*, 526 U.S. at 845, 119 S. Ct. at 1732–33; *Malone*, 538 F.3d at 753; *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004).  One full round includes levels in which review is discretionary rather than mandatory.  *Baldwin v. Reese*, 541 U.S. 27, 29, 124 S. Ct. 1347, 1349 (2004); *Lewis*, 390 F.3d at 1025.  Thus, for federal habeas relief from a conviction in Illinois state court, the petitioner must assert each claim for which he seeks relief to both the Illinois Appellate Court and the Illinois Supreme Court.  *Boerckel*, 526 U.S. at 845, 119 S. Ct. at 1732; *Smith v. McKee*, 598 F.3d 374, 383 (7th Cir. 2010).  The key to fair presentment, however, is that the substance of the federal claim is presented.  *Verdin v. O'Leary*, 972 F.2d 1467, 1474 (7th Cir. 1992) (citing *Anderson v. Harless*, 459 U.S. 4, 6, 103 S. Ct. 276, 277 (1982)).  The petitioner must present his federal claims to the state courts by asserting both the law and the facts underlying them.  *Byers v. Basinger*, 610 F.3d 980, 985 (7th Cir. 2010).  While the petitioner may reformulate his claims, the substance must remain the same.  *Byers*, 610 F.3d at 985; *Sweeney v. Carter*, 361 F.3d 327, 333 (7th Cir. 2004).

If the petitioner fails to comply with the abovementioned requirements, he has procedurally defaulted.  *See Boerckel*, 526 U.S. at 853–54, 119 S. Ct. at 1737.  To overcome a procedural default, the petitioner bears the burden of proving: (1) cause for the default and actual

prejudice as a result of the alleged violation; or (2) that the default "would lead to a 'fundamental miscarriage of justice.'" *House v. Bell*, 547 U.S. 518, 536, 126 S. Ct. 2064, 2076 (2006); *Lewis*, 390 F.3d at 1026. First, to demonstrate cause, the petitioner must be able to show that some objective factor external to his defense impeded efforts to present the federal claim in state court. *Promotor v. Pollard*, 628 F.3d 878, 887 (7th Cir. 2010); *Smith*, 598 F.3d at 382. To meet the prejudice requirement, the petitioner "must shoulder the burden of showing, not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Perruquet*, 390 F.3d 505, 514–15 (quoting *United States v. Frady*, 456 U.S. 152, 170, 102 S. Ct. 1584, 1596 (1982)). Finally, the "fundamental miscarriage of justice" exception requires that the petitioner actually demonstrate his innocence. *Gonzales v. Mize*, 565 F.3d 373, 381 (7th Cir. 2009); *Lewis*, 390 F.3d at 1026.

## II.    Analysis

### a.    *Claim 1 – Ineffective Assistance of Trial Counsel for Failure to Impeach Lopez*

While Sanchez argued ineffective assistance of trial counsel in his direct appeal, the State contends that he defaulted this claim by failing to argue the same factual bases underlying the claim in the state courts. (Answer at 15.) On direct appeal, Sanchez argued that his trial counsel was ineffective for failing to cross-examine Lopez regarding police coercion. (Resp. Ex. A, Rule 23 Order, *People v. Sanchez*, No. 1-05-2306 at 9 (Ill. App. 1st Dist. 2007).) However, in his federal habeas petition, Sanchez claims that his trial counsel was ineffective for failing to impeach Lopez with her perjury based on her use of drugs when providing her statement to the police and testifying before the grand jury. (Pet. at 5.)

While Sanchez must argue the same operative facts and underlying legal principles, he can reformulate his claims as long as the substance remains the same. *Byers*, 610 F.3d at 985; *Sweeney*, 361 F.3d at 333. Thus, to determine if the substance is the same as his direct appeal, we examine how the Illinois Appellate Court viewed his claim. *See Malone*, 538 F.3d at 756 (holding that a pro se petitioner who raised an ineffective assistance of trial counsel within a claim of ineffective appellate counsel did not procedurally default the former claim because he made it clear he sought review of that claim as indicated by the opinion of the appellate court). In his direct appeal, the Illinois Appellate Court recognized Sanchez's claim generally as ineffective assistance of trial counsel for failing to sufficiently cross-examine Lopez. (Resp. Ex. A, Rule 23 Order, *People v. Sanchez*, No. 1-05-2306 at 10 (Ill. App. 1st Dist. 2007).) While the opinion references Sanchez's specific concern of her alleged coercion, the court broadly addressed whether the decision to cross-examine or impeach a witness is a matter of trial strategy. (*Id.*) Thus, given that we construe pro se petitions liberally, *Johnson v. Hulett*, 574 F.3d 428, 433 (7th Cir. 2009); *Lewis*, 390 F.3d at 1027, Sanchez's claim in his habeas petition that trial counsel was ineffective for failing to impeach Lopez with perjury argues the same operative facts and legal principles as he presented during direct appeal. (Pet. at 5.) Therefore, Claim 1 is not procedurally defaulted, and we will examine it on the merits.

   b.   *Claim 2 – Ineffective Assistance of Trial Counsel for Failure to Call Witnesses*

In Claim 2 of his habeas petition, Sanchez contends that his trial counsel was ineffective for failing to call witnesses that would have led to a different outcome in his trial. (Pet. at 5.) Based on the petition alone, it is unclear to which witnesses Sanchez is referring. Regardless, the State argues that Sanchez procedurally defaulted this claim because he did not assert this

factual base underlying the claim in the state courts. (Answer at 15.) Therefore, to determine if he did procedurally default, we turn to the claims that were asserted during his post-conviction proceedings and his direct appeal.

In his post-conviction petition, Sanchez claimed that trial counsel was ineffective for failing to call Donna Parra and other unnamed witnesses to the stand. (Resp. Ex. I, Post-Conviction Petition, *People v. Sanchez*, No. 04 CR 2166 at 3–4 (Cook Cty. Cir. Ct. 2008).) However, Sanchez did not assert these claims to the Illinois Appellate Court or the Illinois Supreme Court. Therefore, he did not fairly present these claims through one full round of post-conviction proceedings.

On direct appeal, Sanchez claimed his trial counsel was ineffective for failing to provide evidence, such as entering a stipulation or calling Anderson to the stand, that Sanchez was not a gang member. (Resp. Ex. A, Rule 23 Order, *People v. Sanchez*, No. 1-05-2306 at 9 (Ill. App. 1st Dist. 2007).) Unlike in his post-conviction proceedings, Sanchez did pursue this claim through one complete round of state court review. Thus, if we construe the habeas petition as referring to Anderson's testimony, it is possible that his claim remains viable. However, to reach the merits, we would also have to liberally construe the petition to find that the same operative facts are presented here as in the appellate court below. *See Johnson*, 574 F.3d at 433 (finding that pro se petitions should be construed pro se petitions liberally). Nonetheless, as discussed below, we must dismiss this claim even if we reach the merits. Therefore, we need not decide whether Sanchez defaulted on this claim.

c. *Claim 3 – Ineffective Assistance of Appellate Counsel for Failure to Present Issue of "Knowing Perjury"*

Sanchez procedurally defaulted this claim for failing to fairly present it through one complete round of state court review. *Boerckel*, 526 U.S. at 845, 119 S. Ct. at 1732–33; *Malone*, 538 F.3d at 753. In his post-conviction petition, Sanchez claimed that his appellate counsel was ineffective for failing to raise the issue of trial counsel's ineffectiveness for not cross-examining ASA Turano-Michiels when she read Lopez's statement into evidence. On appeal, Sanchez maintained this claim, asserting the ineffectiveness of appellate counsel for failing to argue that trial counsel was ineffective for not objecting to the admission of inculpatory statements read into evidence by ASA Turano-Michiels. (Resp. Ex. K, Rule 23 Order, *People v. Sanchez*, No. 1-08-3413 at 1, 6 (Ill. App. 1st Dist. 2010).) While Sanchez raised the same legal principle of ineffective assistance of appellate counsel in his habeas petition, he did not raise the same operative facts. In his petition, he argued that appellate counsel was ineffective for failing to present the issue of Lopez's "knowing perjury," (Pet. at 5), as opposed to focusing on the testimony of ASA Turano-Michiels. Accordingly, Claim 3 is defaulted.[3]

d. *Claim 4 – Prosecutorial Misconduct for Acts and Non-Acts of Attorneys*

Sanchez similarly defaulted on Claim 4, alleging prosecutorial misconduct or violation of due process by the acts and non-acts of trial and direct appeal attorneys. While it is not clear to which acts Sanchez may be referring, the only time he asserted prosecutorial misconduct was in his post-conviction petition. (Resp. Ex. I, Post-Conviction Petition, *People v. Sanchez*, No. 04

---

[3] For claims that are procedurally defaulted, Sanchez has not argued cause and prejudice or a fundamental miscarriage of justice. (Resp. at 6.) Therefore, he cannot excuse the defaults, and habeas relief on these claims is denied. *Lewis*, 390 F.3d at 1026–28.

CR 2166 at 2–6 (Cook Cty. Cir. Ct.).)  However, after raising this claim in his petition, Sanchez

failed to pursue the claim through one complete round of review in the Illinois courts.  He did

not raise the claim in his petition to the Illinois Appellate Court or to the Illinois Supreme Court

during the post-conviction proceedings.  Therefore, Sanchez procedurally defaulted, and habeas

relief on Claim 4 is foreclosed.  *See Boerckel*, 526 U.S. at 845, 119 S. Ct. at 1733; *Lewis*, 390

F.3d at 1027.

**MERITS**

I.      **Standard of Review**

   a.      *Standard for Habeas Relief*

In order to obtain habeas relief, a petitioner must establish that the proceedings in state

court resulted in a decision that was "contrary to, or involved an unreasonable application of,

clearly established Federal law, as determined by the Supreme Court of the United States" or

"resulted in a decision that was based on an unreasonable determination of the facts in light of

the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); *see Williams v.

Taylor*, 529 U.S. 363, 404–05, 120 S. Ct. 1495, 1519 (2000); *Morgan v. Hardy*, 662 F.3d 790,

797 (7th Cir. 2011).  In this case, however, the issue is whether the decision was "contrary to, or

involved an unreasonable application of, clearly established Federal law."  28 U.S.C.

§ 2254(d)(1).

A state court's decision is contrary to clearly established Supreme Court precedent "if the

state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question

of law" or "if the state court confronts facts that are materially indistinguishable from a relevant

Supreme Court precedent and arrives at a result opposite to [it]."  *Williams*, 529 U.S. at 405, 120

S. Ct. at 1519; *see Morgan*, 662 F.3d at 797; *Woods v. McBride*, 430 F.3d 813, 816–17 (7th Cir. 2005).

A state court's decision is an "unreasonable application" of clearly established Supreme Court precedent "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of a particular prisoner's case" or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407–08, 120 S. Ct. at 1521; *Morgan*, 662 F.3d at 797. A state court's application of Supreme Court precedent must be more than incorrect or erroneous; it must be "objectively" unreasonable. *Williams*, 529 U.S. at 410, 120 S. Ct. at 1522 (finding that "an *unreasonable* application of federal law is different from an *incorrect* application"); *see Morgan*, 662 F.3d at 797. To be unreasonable under this standard, the decision of the state court must lie "well outside the boundaries of permissible differences of opinion." *Watson v. Anglin*, 560 F.3d 687, 690 (7th Cir. 2009) (quoting *Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002)); *see Henderson v. Briely*, 354 F.3d 907, 909 (7th Cir. 2004) ("[T]he question before a federal court on collateral review . . . is only whether the state court's decision was so far out-of-bounds as to be 'unreasonable.'").

b. *Standard for Ineffective Assistance of Counsel under* Strickland

Courts analyze the Sixth Amendment right to effective assistance of counsel under the framework set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1994). To support an ineffective assistance claim, a petitioner must show: (1) specific acts or omissions by his lawyer were deficient; and (2) the "deficient performance prejudiced the defense."

16

*Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064; *see Morales v. Johnson*, 659 F.3d 588, 599–600 (7th Cir. 2011). To meet the first prong, a petitioner must demonstrate that his counsel's performance "fell below an objective standard of reasonableness," *Strickland*, 466 U.S. at 688, 104 S. Ct. at 2064, and essentially "deprived him of 'counsel' within the meaning of the Sixth Amendment." *Bieghler v. McBride*, 389 F.3d 701, 707 (7th Cir. 2004). The second prong requires that the petitioner show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068.

In the context of a § 2254 review, however, we do not simply apply the *Strickland* test as if we were reviewing the state court conclusions anew. *Williams*, 529 U.S. at 405, 410. Rather, we examine whether the Illinois courts either confronted facts that are "materially indistinguishable from a relevant Supreme Court precedent and arrive[d] at a result opposite to [the Supreme Court's result]," or made a decision that was "objectively unreasonable" under *Strickland*. *Id.* Essentially, the "bar for establishing that a state court's application of the *Strickland* standard was 'unreasonable,' is a high one," *Taylor v. Bradley*, 448 F.3d 942, 948 (7th Cir. 2006), in that "'*only a clear error* . . . [will] support a writ of habeas corpus.'" *Murrell v. Frank*, 332 F.3d 1102, 1111 (7th Cir. 2003) (quoting *Holman v. Gilmore*, 126 F.3d 876, 882 (7th Cir. 1997)).

## II.     Analysis

   a.    *Claim 1 – Ineffective Assistance of Trial Counsel for Failure to Impeach Lopez*

In Claim 1, Sanchez argues that his trial counsel was ineffective for failing to impeach Lopez. (Pet. at 5.) In Sanchez's direct appeal to the Illinois Appellate Court, the Court reviewed

the claim of ineffective assistance of trial counsel for failure to cross-examine or impeach Lopez.  (Resp. Ex. A, Rule 23 Order, *People v. Sanchez*, No. 1-05-2306 at 9–14 (Ill. App. 1st Dist. 2007).)  We find that the state appellate court reasonably applied the *Strickland* test.

Under *Strickland*, Sanchez must prove that his counsel's conduct fell below an objective standard of reasonableness.  However, not impeaching or cross-examining Lopez was a matter of trial strategy.  *United States v. Jackson*, 546 F.3d 801, 814 (7th Cir. 2008) ("[D]eciding which questions to ask a prosecution witness on cross-examination is a matter of strategy."); *see United States v. Hirschberg*, 988 F.2d 1509, 1513 (7th Cir. 1993) (finding that "when defendants attack trial counsel's strategy choices, we offer enormous deference to those choices, and we do not rely on the 'perfect vision of hindsight'"); *United States ex rel. Kleba v. McGinnis*, 796 F.2d 947, 955 (7th Cir. 1986) (holding that "[t]he Supreme Court's decision in *Strickland* made the law eminently clear that the judgments of counsel involving strategic decisions will not be considered as a proper basis for bringing a Sixth Amendment ineffective assistance of counsel claim").  While trial counsel did not ask Lopez about the alleged police coercion or about being under the influence when giving her prior statement and testimony, the attorney did question her about Sanchez's actions that night.  (Resp. Ex. A, Rule 23 Order, *People v. Sanchez*, No. 1-05-2306 at 11 (Ill. App. 1st Dist. 2007).)  She testified that Sanchez did not leave the apartment that night; did not have a shotgun or ammunition; and did not change his clothes, wash his hands with bleach, or vomit in the bathroom.  (*Id.*)  She also testified that Sanchez was not a member of a gang.  (*Id.*)  Thus, Sanchez's attorney set forth a valid defense and relied on Lopez's testimony that Sanchez never left the apartment that evening.  *See Kleba*, 796 F.2d at 955.  While the jury ultimately rejected Lopez's trial testimony, the decision of Sanchez's attorney not to cross-

examine her with respect to police coercion or being under the influence of drugs was one of trial strategy and does not fall below the line of reasonableness. *See Hirschberg*, 988 F.2d at 1513.

Even if the conduct of Sanchez's attorney did fall below the line of objective reasonableness, Sanchez cannot prove that "but for" that error, the proceeding would have led to a different result. In assessing whether this error may have led to a different outcome, we consider the "'evidence in its totality.'" *Malone*, 538 F.3d at 759 (quoting *Wright v. Gramley*, 125 F.3d 1038, 1042 (7th Cir. 1997)). Sanchez's attorney not only questioned Lopez about Sanchez's whereabouts that night, but he also cross-examined all of the State's witnesses regarding Sanchez's involvement. (Resp. Ex. A, Rule 23 Order, *People v. Sanchez*, No. 1-05-2306 at 14 (Ill. App. 1st Dist. 2007).) These witnesses affirmed that Sanchez was never seen with a gun that night, was never seen at the sight of the shooting, and was not picked out of a lineup. (*Id.*) Accordingly, the jury was confronted with two different versions of the events that night: one, Sanchez never left the apartment and was not identified as an individual involved in the shooting; and two, Sanchez drove the car that enabled Parra to shoot the victims. The consideration of the weight of each of these stories and related evidence is well within the jury's discretion, and after deliberation, the jury decided Sanchez was involved in the shooting. Therefore, even though Sanchez's attorney could have cross-examined Lopez regarding possible coercion or being under the influence of drugs, we find that this decision not to do so did not create a reasonable probability that the result of the trial would have been different. We hold that Claim 1 is without merit.

*Claim 2 – Ineffective Assistance of Trial Counsel for Failure to Call Witnesses*

In Claim 2, Sanchez claims that his trial counsel was ineffective for failing to call witnesses that could have led to a different outcome in the proceeding. (Pet. at 5.) During his direct appeal, Sanchez alleged that his attorney was ineffective for failing to offer evidence, such as calling Anderson to the stand, that Sanchez was not in a gang. (Resp. Ex. A, Rule 23 Order, *People v. Sanchez*, No. 1-05-2306 at 9 (Ill. App. 1st Dist. 2007).) We find that the state court reasonably applied *Strickland* in denying this claim.

The failure to call Anderson was not objectively unreasonable because the "'decision to call or not to call a witness is a strategic decision generally not subject to review.'" *United States v. Best*, 426 F.3d 937, 945 (7th Cir. 2005) (quoting *United States v. Williams*, 106 F.3d 1362, 1367 (7th Cir. 1997) (internal citation and quotation marks omitted)). To examine whether this decision was deficient, several factors are considered including the "counsel's overall diligence, the likely relevance of the witness's testimony, whether alternative ways of proving the point exist, and the strength of the government's case." *Id.* Sanchez claims that his lawyer should have called Anderson to the stand to testify that Sanchez was not a gang member. (Resp. Ex. A, Rule 23 Order, *People v. Sanchez*, No. 1-05-2306 at 9 (Ill. App. 1st Dist. 2007).) However, his counsel was diligent in ensuring that evidence was presented that Sanchez was not involved in a gang. Several alternative ways were utilized including Lopez's direct examination, her cross-examination, and her grand jury testimony. (*Id.* at 15.) Thus, the record included multiple consistent statements that Sanchez was not in a gang. (*Id.*) Therefore, the attorney's decision not to call Anderson was not unreasonable. Similarly, because the same evidence was offered several times elsewhere throughout the trial and the State even conceded that Sanchez

was not in a gang, the attorney's conduct would likely not have affected the outcome of the proceeding.  We conclude that Claim 2 fails on the merits.

## CONCLUSION

For the reasons set forth above, we deny Sanchez's petition.  It is so ordered.

_____
Honorable Marvin E. Aspen
U.S. District Court Judge

Dated: February 27, 2012